**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CRIMINAL ACTION NO. 6:25-CR-012-REW**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**V.**           **GOVERNMENT'S RESTITUTION MEMORANDUM**

**CHARLES NNAMDI EMESIM**                                          **DEFENDANT**

\* \* \* \* \*

On May 13, 2026, the Court sentenced the Defendant to 115 months' incarceration, to be followed by three years' supervised release, along with a $673,924.00 forfeiture money judgment and a "$1,218,815 preliminary restitution award consistent with the parties' agreement and the PIR." [R. 105: Minutes for Sentencing, at Page ID # 732; R. 108: Judgment at Pag ID # 738.]   The Court ordered the United States to submit a supplemental brief "regarding any additional restitution amount sought over and above the PIR amount." [*Id.*]

Prior to the sentencing hearing but after the issuance of the final Presentence Investigation Report ("PIR"), via its sentencing memorandum, the United States notified the Court and the defense of its position to request additional restitution amounts as to three victims, by virtue of their requests for additional restitution in their declarations of victim loss.  [R. 104: U.S. Sentencing Memo at Page ID 726-29.] The United States reasserts and

1

confirms its position that each of these three victims are entitled to the full amount of their losses, at their requested amount, which would increase the total restitution figure to **$1,592,315.00.**

### Legal Framework

The Mandatory Victim Restitution Act ("MVRA") requires full payment of restitution to victims. 18 U.S.C. § 3663A(a)(1) and (c)(1)(B); *see, e.g.*, *United States v. Roper*, 462 F.3d 336, 338 (4th Cir. 2006) ("This language clearly states that a restitution order imposed under the MVRA is mandatory."). "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); *Roper*, 462 F.3d at 339 (noting that the MVRA removed a district court's discretion to order restitution for less than the full amount of the victim's loss, even when a defendant lacked the ability to pay). Under the MVRA, then, the Court must order restitution in this case.

Restitution awards must reflect the victim's "actual loss," and the government bears the burden of proving that loss by a preponderance of the evidence. *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015); 18 U.S.C. § 3664(e). "Although the MVRA does not require courts to calculate restitution with *exact* precision, *some* precision is required—[s]peculation and rough justice are not permitted." *Kilpatrick*, 798 F.3d at 388 (alteration in original) (internal quotation marks and citation omitted). The "district court need not make specific factual findings," but "the information underlying an award must

have sufficient indicia of reliability to support its probable accuracy." *United States v. Sawyer*, 825 F.3d 287, 294–95 (6th Cir. 2016) (internal quotation marks and citation omitted).

Here, the Defendant should be held liable in restitution for victims' total losses, that is, the amounts sent to the Defendant's accounts, as well as those sent to others as part of the same fraud and money laundering scheme. *See United States v. Bogart*, 576 F.3d 565, 576 (6th Cir. 2009) ("While Bogart argues that because his particular actions did not cause the victims' losses, he should not be held responsible for the restitution payment, this Court has rejected such an argument. . . . 'In the context of a conspiracy, it is clear that a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators. No court has ever held to the contrary.'") (citation omitted); *see also United States v. Bailey*, 973 F.3d 548, 575–76 (6th Cir. 2020) (recognizing propriety of "using conspiracy principles to determine a defendant's amount of restitution" extending to "the loss caused by the entire conspiracy" as contrasted with guidelines application for sentencing purposes).

Further, the Court is not required to limit its restitution award to the amount specified in the presentence report. *Sawyer*, 825 F.3d at 298. No restitution amount was agreed upon in the Plea Agreement. [*See* R. 89 at ¶ 13 ("The Defendant agrees to pay restitution in an amount to be determined at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of

conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.")]

## Analysis

The PIR identified 25 victims that each suffered a loss as a result of Emesim's personal conduct, for which they are entitled to restitution.  Each of these victims sent funds to Emesim, but many also sent money to others similarly situated to Emesim and part of the criminal enterprise. The parties agree to the restitution amounts as to 22 of these 25 victims, and agree to a baseline restitution figure for the remaining three victims (A.W., G.S., and J.L.) insofar as those amounts are provided in the PIR. The United States, however, requests that the Court order restitution as A.W., G.S., and J.L. in the amounts they requested through Victim Declaration of Loss or Victim Impact Statement, which exceed the amounts listed in the PIR.  Those amounts are as follows:

| | Victim | Agreed Upon in PIR: Transferred to Emesim | Additional Amounts Requested by Victim | Total |
|---|---|---|---|---|
| 1 | A.W. | $ 85,500.00 | $14,500.00 | $ 100,000.00 |
| 2 | G.S. | $ 2,500.00 | $ 127,500.00 | $ 130,000.00 |
| 3 | J.L. | $ 18,500.00 | $ 231,500.00 | $ 250,000.00 |

*A.W.*

The parties agreed that A.W. sent Emesim $85,500 that is owed to her in restitution. In her Victim Declaration of Loss, however, A.W. stated that she believes she is entitled to restitution in the total amount of $100,000.00. *See* Attachment A.  She provided two

additional statements on this form: 1) "there was more that was sent through Western Union but I don't have my receipt[s]," and 2) that she was unable to get additional records from her bank because it has been more than 10 years since she sent the wires. *See id.*

The Court can rely on this Declaration of Loss alone to award A.W. with the full $100,000 in restitution. "[V]ictim affidavits will generally provide sufficient, reliable evidence to support a restitution order." *United States v. Kuo*, 620 F.3d 1158, 1167 (9th Cir. 2010) (citation omitted); *see also Martin v. United States*, 889 F.3d 827, 833 (6th Cir. 2018) (holding that a "'self-serving' affidavit is not inherently incredible") (collecting cases). Other evidence, however, supports A.W.'s request.

On May 14, 2026, the FBI interviewed A.W., inquiring about the additional $14,000 she believes she sent to the scammers. She confirmed that she did not have receipts, but stated that she "recalled also going to Western Union on four separate occasions to send money to someone related to the same fraudulent scheme," and that she sent "approximately $5,000 on two occasions and $2,000 on two occasions." *See* Attachment B. A.W. explained she sent this money "in exchange for certificates," which is consistent with the fake oil investment scheme perpetrated against her. *Id.* A.W. even "remembered going to a Western Union a fifth time; however, Western Union employees denied [her] request to send money after they asked her several questions, to include how she knew the person she was sending money to." *See id.*

Based on the information provided above, A.W.'s Victim Declaration of Loss is reliable, and the district court need not elicit other evidence or subject the victim to cross-

examination. *See United States v. Fike,* 140 F.4th 351, 358 (6th Cir. 2025). It should order restitution to A.W. in the amount of $100,000.

*G.S.*

The parties agree that G.S. sent Emesim $2,500, but G.S. claimed in his Victim Impact Statement that he knows he lost $130,000 to this scheme. *See* Attachment C.  In this statement, G.S. provided information about the individuals who scammed him.  They included Eric Moore, a purported FBI Agent who was to provide G.S. with $10,000,000; Marcos Rivera, a purported FinCEN representative who was to assist with the transfer of the funds; Anthony Scott, a purported United Nations representative; Diplomatic Agent Ozil Reed, another agent who required additional fees; Patience, who was supposed to help him; and Samuel Rock, who flew in person to the airport close to G.S. to deliver him documents. *See id.* G.S. claims to have sent fees to many of these individuals. *See id.*

G.S.'s declaration of loss through his Victim Impact Statement alone is sufficient to support a restitution award in the full amount of $130,000. Other evidence, however, supports his request.  In March of 2021, the FBI interviewed G.S., who at the time stated he lost approximately $200,000 over the course of two years. *See* Attachment D. He provided numerous receipts in support of his complaint.  *See id.* These receipts support over $80,000 in cash withdrawals and money transfers as a result of the fraud being perpetrated against him at the time.

G.S. also provided the United States with his communications with his perpetrators. *See* Attachment E. These communications show that G.S. repeatedly declared that he's

6

already sent $90,000 in the hopes of getting his large payout. *Id.* It is worth nothing that these email communications did not involve all the individuals mentioned above, meaning it is likely that additional communications with additional fake government officials would support additional funds being transferred by G.S.

On March 15, 2026, the FBI interviewed G.S. again about his calculated losses. *See* Attachment F. In that interview, G.S. explained that he maintained a handwritten ledger of the payments he sent as a result of this frauds scheme beginning in 2018.  He provided the ledger, which substantiates over $125,000 in losses. *See* Attachment G.

G.S.'s consistent statements and supporting documentation demonstrate that he sent a significant sum of money to a variety of perpetrators.  His $130,000 estimated loss amount is actually likely short of the total amount he truly sent to these scammers. The Court should order his restitution in full.

*J.L.*

The parties agree that J.L. sent $ 18,500.00 to Emesim, but J.L. contends that he is entitled to a total restitution amount of $250,000 in his Victim Declaration of Loss. *See* Attachment H.  J.L. explained that he cannot provide an exact figure, as he deleted his correspondence relating to this fraud.  *Id.* He signed his Declaration of Loss under penalty of perjury, providing sufficient indicia of reliability for the Court to rely on the statement to support a finding that J.L. is entitled to a $250,000 restitution judgment. *Id.*

To support this conclusion, the Court can also rely upon other information collected in this investigation. On May 14, 2026, the FBI interviewed J.L. about the additional losses

he claimed.    He confirmed the amount he lost to scammers as being approximately $250,000. *See* Attachment I. J.L. advised he sent as much as $100,000 to the scammers in gift cards. *Id.* This is consistent with how the scammers would obtain funds from gift cards with other victims as well.   Because two of his bank accounts have closed down, and due to his recent injuries, he is unable to provide further details about what happened to him.

During the investigation, J.L. provided one email he sent to his perpetrator with the two images of checks he sent in furtherance of this scam. *See* Attachment J. These checks were for $3,800 each, and addressed to an individual other than Emesim. *Id.* This substantiates that he transferred money to others alongside Emesim.   Accordingly, the Court should award J.L. with restitution in the amount of $250,000.

## CONCLUSION

For the foregoing reasons, the United States asks the Court to impose a restitution award in the amount of $ 1,592,315.00, consistent with the amounts listed in the PIR, except with the following increased loss figures for the following victims:

| | *Victim* | *Total* |
|---|---|---|
| 1 | A.W. | $ 100,000.00 |
| 2 | G.S. | $ 130,000.00 |
| 3 | J.L. | $ 250,000.00 |

Respectfully submitted,

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

8

By:    */s/ Kathryn M. Dieruf*
Kathryn M. Dieruf
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4885
Kathryn.Dieruf@usdoj.gov

9

## CERTIFICATE OF SERVICE

On May 18, 2026, I electronically filed this document through the ECF system, which will send notice to counsel of record.

/s/ Kathryn M. Dieruf
Assistant United States Attorney

10